United States District Court
Southern District of Texas
**ENTERED**
August 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INTERTEK TESTING SERVICES NA, INC. § § *Plaintiff*, § VS. § § GREGG TIEMANN, § § *Defendant*. § § § § | CIVIL ACTION NO. 4:23-CV-00425 |

## ORDER

Currently before the Court is a Motion for Summary Judgment filed by Intertek Testing Services NA, Inc. ("Plaintiff" or "Intertek") (Doc. No. 49). Defendant Gregg Tiemann ("Defendant" or "Tiemann") has responded in opposition. (Doc. No. 55). Tiemann has also filed a Motion for Summary Judgment (Doc. No. 46) to which Intertek has responded in opposition. (Doc. No. 52) and Defendant has replied. (Doc. No. 54). Tiemann has also filed a Motion to Strike the Declaration of Amy Jordan ("Jordan") to the extent it seeks to contradict her previously sworn deposition testimony. (Doc. No. 53). Plaintiff has responded in opposition (Doc. No. 57) and Defendant has replied. (Doc. No. 58).

**I.    Motion to Strike**

Tiemann concedes that the general rule governing motions for summary judgment is that the Court must consider all the evidence placed before it and cannot pick and choose between the evidence it believes and that which it finds less credible. *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022). One of the few exceptions to this rule is the sham affidavit doctrine. This doctrine, simply put, states that in a summary judgment context a court need not consider as evidence alleged facts set out in an affidavit that contradicts previously given

deposition testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation." *Seigler,* 30 F.4th at 476. This Court routinely enforces this rule.

Tiemann claims that Jordan's Declaration contradicts her deposition in two distinct areas: 1) her desire to leave Intertek and her pursuit of a job at Eurofins; and 2) the reasons for her salary increase when hired back by Intertek. Tiemann argues that Plaintiff has impliedly conceded the contradictory positions by the fact that in its motion for summary judgment it only cites the later conceived Declaration and never cites to Jordan's earlier deposition.

Plaintiff has responded by arguing that Jordan's Declaration does not directly contradict any testimony given at her deposition and that the sham affidavit doctrine applies only to "inherently inconsistent" prior testimony. *See Siegler*, 30 F.4th at 477.

For the most part, the Court finds little merit in the motion to strike. There is very little by way of specific testimony that is directly contradicted by the Declaration. Indeed, Tiemann's reply more or less highlights the quandary. The reply claims that the Declaration:

> …removes the context and nuance of her deposition and presents a series of tailor-made statements to support Intertek's claims, whereas Ms. Jordan's deposition testimony presents a contextualized and multifaceted account of her path away from and back to Intertek…

(Doc. No. 58 at 2).

This may be true, but unfortunately for Tiemann, this Court finds no direct contradictions. While the Court understands that the Declaration was no doubt crafted to support Plaintiff's pleadings and that it omits all context and the overall gist that one might gain from the actual deposition, the Court finds little reason to strike it in its entirety. Fortunately for Defendant, the Court finds that it makes little difference in the resolution of the motions concerning the merits.

## II. Case Background

This dispute centers around whether Tiemann breached his contractual duties to Intertek by recruiting two Intertek employees to take positions at Eurofins in violation of his commitment not to recruit Intertek employees for a period of two years. Intertek claims that Tiemann breached his contractual obligations by recruiting Jordan and Kimberly Maks ("Maks"). It also pleads in its First Amended Complaint that Tiemann also breached his contractual duties by "using and divulging confidential or proprietary information." (Doc. No. 41).[1] Intertek now seeks summary judgment on its claim that Tiemann breached his contractual duty not to solicit Intertek employees by soliciting Jordan and Maks.

Tiemann has denied these allegations and has moved for summary judgment in his own right. First, he argues that there is no evidence that Tiemann used or divulged confidential information. Second, he argues that the non-solicitation agreement is overly broad and therefore unconstitutional. He also argues that even if the provision was lawful, there is no evidence that he solicited either Maks or Jordan. Further, he maintains there is no provision in any of the pertinent agreements that would allow Intertek to claw back his severance payments. Finally, he seeks attorney fees under the fee shifting provisions under the Texas Uniform Trade Secrets Act. He argues that he is the prevailing party on that claim and thus should be awarded his attorney fees.

## III. The Motions for Summary Judgment

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

---

[1] This First Amended Complaint dropped all statutory claims for misappropriation of trade secrets and confidential information. Tex. Civ. Prac. & Rem. Code 134A *et seq.*

3

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

**B. Background**

The parties are in general agreement with the facts leading up to Tiemann's taking a position at Eurofins. Tiemann began his employment at Intertek in 2001. Tiemann was still employed at Intertek in 2008 when he and Intertek entered into a written employment agreement. That agreement contained a provision whereby Tiemann agreed that after his employment ceased he was not to solicit any current or former employee (dating to 2005) for a period of 24 months. Tiemann continued to work at Intertek until he resigned in May 2021. On June 4, 2021, Tiemann and Intertek executed certain agreements concerning his severance package. This package totaled over $700,000 in benefits. Tiemann acknowledged his agreement not to solicit Intertek employees

for two years and that he would not himself work with a competitor for one year. Tiemann left Intertek and went to work for Encore in June 2021. In July 2021, he accepted a position at Eurofins as an Executive Vice President. His acceptance of this position is not at issue, as all sides agree that the non-compete portion of the agreement had expired.

## IV. Analysis

### A. The Non-Solicitation Clause

Tiemann claims the non-solicitation provision is too broad and therefore unenforceable. The provision in question reads as follows:

> For a period of twenty four (24) months following the termination of employment for whatever reason, you shall not, either on your own behalf or on behalf of your new employer (either directly or indirectly via a corporate recruiter or headhunter a) induce, solicit, entice, encourage or produce or otherwise entice any employee of Intertek to leave the company, nor shall you attempt to hire any of the [sic] Intertek's employees; b) knowingly initiate any communication with any employee of Intertek concerning the business, management or operations of Intertek, and/or c) hire accept into employment or otherwise engage, or use the services of anyone who [sic] an employee of Intertek. "Employee of Intertek" shall mean anyone who is an employee of Intertek, its subsidiaries or its affiliated companies or who has been an employee of Intertek, its subsidiaries or its affiliated companies at any time on or after January 1, 2005.

(Doc. No. 46-7 at 5-6).

The law in this area is well-established, and for the most part, the parties agree on it. Initially, both sides agree that Texas law controls this situation.[2] Under Texas law, covenants not to compete and non-solicitation agreements fall under the same legal dictates. *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 439-39 (S.D. Tex. 2008) (Rosenthal, J.). Both are considered restrains of trade and are unenforceable unless reasonable. Tex. Bus. & Com. Code § 15.50(a). Both are enforceable if they are: 1) ancillary to an otherwise enforceable agreement at the time the agreement is made; and 2) the agreement contains reasonable limitations as to time,

---

[2] *See, e.g.,* Tiemann's Motion (Doc. No. 46-1 at 17-19); Intertek's Motion (Doc. No. 45 at 15-19).

5

geographic area, and scope of activity to be restrained. *Id.* The enforceability of such a restraint of trade is a question of law. *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 668-69 (Tex. 1990).

If an agreement is found to be unreasonable in scope, a court is instructed to reform the agreement to the extent necessary to make the agreement reasonable. Tex. Bus. & Com. Code § 15.51(c). If a court reforms a covenant not to compete, in order to make it reasonable and enforceable, the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief. Tex. Bus. & Com. Code 15.51(c). *See also Safeworks, LLC v. Max Access, Inc.*, No. CIV.A. H-08-2860, 2009 WL 959969 at *5 (S.D. Tex. Apr. 8, 2009).

Having set out the guiding principles that this Court should employ in evaluating the clause in question, the Court turns to the actual dispute in this matter. Tiemann basically concedes that the non-solicitation clause is ancillary to an otherwise enforceable agreement. He also concedes, at least impliedly, that the length of the agreement (two years) is reasonable. Instead, Tiemann argues that the non-solicitation clause is too broad because it applies to all employees (regardless of where they worked) who have worked for Intertek since 2005. This means that the clause would cover not only Intertek's current 40,000-plus employees worldwide, but also covers every person who worked for Intertek since January 1, 2005. The evidence demonstrates that over this last decade, Intertek's employee turnover rate was between 20-25 percent – or 8,000-10,000 per year. Thus, if these percentages run true as applied back to 2005, this provision covers well over 100,000 individuals regardless of where they worked or what they did at Intertek.

Intertek responds by contending that Tiemann waived this defense and by pointing out to the Court that it has the power, if not the duty, to reform the clause to make it reasonable. Finally,

6

it contends that all of the alleged problems with the clause are basically irrelevant and/or immaterial when viewed through the prism of the actual facts in this case.

As an initial matter, the Court does not find this issue to be waived. More importantly, the Court finds the clause in question to be much too broad in terms of its scope. As written, this non-solicitation clause applies to over 100,000 individuals – over half of whom have not worked for Intertek for years. For example, if the 2010-forward statistics are reflective of the prior five years, the clause applies to 40,000-plus individuals who have not worked at Intertek for over a decade. This clearly is an unreasonable restraint.

Having found the provision to be unenforceable as written, the Court is faced with three overriding problems: 1) should it reform the clause; and 2) what would be the effect of any reformation. The third problem is much more perplexing. Can, or should, this Court ignore the problematic language since any reasonable reformation of the clause would almost invariably include the solicitation of Jordan and Maks?

The Court finds that any revision to the non-solicitation clause would be pointless. First, as noted above, a court cannot award damages pursuant to a clause that has been reformed. *See Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952 (1960). It can only award injunctive relief. In the instant case the contractual restrictions on Tiemann expired on June 4, 2023. While this Court may have the power to reform the contractual provisions to make them reasonable restraints, it cannot expand the restrictions to include time periods not covered by the initial contract. In other words, it cannot impose an injunction to make Tiemann conduct himself pursuant to the terms of an expired contract. *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. App.—Dallas 1976, writ ref'd n.r.e.).

7

The more intriguing question is presented to the Court somewhat indirectly. Intertek, probably correctly, argues that however this Court (or any court for that matter) would revise the non-solicitation clause it would cover Jordan and Maks, given their positions vis-à-vis Intertek and Tiemann. Stated another way, the fact that the clause in question is too broad is totally irrelevant because any clause—no matter how narrowly drafted, and regardless of who wrote it—would cover Jordan and Maks. As a result, Intertek argues, the Court should just enforce the clause as written against Tiemann.

While this Court admits such an argument has a certain amount of surface appeal, the Court finds that it is not supported by the law. The clause is either enforceable as written, or it is not. The Court has found it is not. To be enforceable, it must be reformed. The law is clear that once reformed, the Court cannot award damages on the basis of the original, unreasonable contract; nor can it award damages based upon a newly reformed contract, irrespective of the fact that the two women who were allegedly solicited by Tiemann would have been covered by either. That being the case, the Court grants Tiemann's Motion for Summary Judgment.[3] (Doc. No. 46).

While the Court's ruling on the enforcement of the non-solicitation clause should be case dispositive, the Court feels compelled to address the factually dispositive portions of both motions in case the Court of Appeals disagrees with the above rulings concerning the enforcement of the non-solicitation clause.

### B. Alleged Solicitation of Maks

The Court finds that there is no evidence that Tiemann solicited Maks. The sole fact referred to by Intertek to support its claim as to Maks is a November 2, 2022 text from Maks to

---

[3] The Court does not find Tiemann has waived this argument so there is no need to discuss this ruling in detail.

8

Defendant. In that text she states: "Sooo, you know my answer. I want to touch base before I talk to Rich [Adams]." (Doc. No. 29 at 13; Doc. No. 49-8 at 29).

Maks was Tiemann's Executive Assistant while he was at Intertek. When he left, she began to work for Gavin Campbell ("Campbell"). Campbell was fired by Intertek and Maks, as his Executive Assistant, feared the "handwriting was on the wall" for her too. Fearing she was soon to be terminated, she contacted Rick Adams ("Adams"), who, like Tiemann, was a former Intertek employee who was now working at Eurofins. She did not contact Tiemann, despite the fact that they had worked together for 17 years at Intertek, because she knew he was contractually banned from offering her a job for two years.

She contacted Adams on his birthday. All of her dealings with regard to a job at Eurofins was either to or through Adams, not Tiemann. The text to Tiemann referenced above was "to let [Tiemann] know I was going to be talking to Rick formally." (Doc. No. 49-8 at 15, 43:21-24). Her interview was with Adams and her initial job at Eurofins was for Adams.

In summary, Tiemann's contract with Intertek requires him to refrain from either directly or indirectly inducing, soliciting, enticing, encouraging, or procuring any employee of Intertek to leave the company. It also prohibits any attempt to hire any Intertek employee. (Doc. No. 49-1 at 5-6). Plaintiff has provided no evidence that Tiemann has violated any of these prohibitions. The text in question is not proof and all of Plaintiff's arguments about its meaning and alleged context are merely speculation upon which no reasonable jury could base a verdict. Tiemann's motion for summary judgment is granted as to this point.

### C. Amy Jordan

#### a. Recruitment

Tiemann denies that he had any role in the recruitment of Jordan. Further, Jordan testified that she was unhappy with her job at Intertek and was looking to leave. She also testified that she

9

negotiated her deal with Eurofins with someone other than Defendant (Nimer Alhaffi). Plaintiff, even setting aside Jordan's Declaration, has some evidence from which a jury could find that Tiemann violated the non-solicitation agreement. For example, Tiemann apparently told Victor Berrizbeitia about Jordan's interest in joining Eurofins. He recommended her. He had a luncheon with Jordan in May of 2022 at which they discussed her future. They communicated about the status of her offer, and when she received an offer from Eurofins, she thanked Tiemann. He acknowledged the "thanks" and told her he looked forward to working with her. He also participated in her interview process and had input into the compensation she was eventually offered. (Doc. No. 50 at 2).

The Court finds there is sufficient evidence to raise an issue of material fact as to whether Tiemann had a sufficient level of involvement such that it would violate his contract with Plaintiff. Moreover, Tiemann effectively admits as much in his response:

> With regard to the other breach of contract Intertek alleges, ie., that Mr. Tiemann solicited Amy Jordan to Eurofins, there are several genuine factual disputes which preclude summary judgment.
>
> xxx
>
> In addition to the factual disputes with respect to the alleged solicitation of Ms. Jordan….

(Doc. No. 55 at 1-2).

The motions for summary judgment are both denied as to the issue of the alleged recruitment of Amy Jordan.

### b. Damages

Tiemann also argues that he is entitled to summary judgment on the Jordan recruitment claim because Intertek has no resulting damages. In summary, Jordan was employed at Intertek as Director of Financial FP&A (Financial Planning and Analysis) in the Electrical Division. She was unhappy with her situation due to the lack of promotion and the fact that her salary increases were

less than desirable. She felt that she was working long hours and her work/life balance was suffering.

She left Intertek in the fall of 2022. She worked at Eurofins for approximately four to six weeks when Intertek hired her back as Vice President of Finance (at a higher salary) for the Electrical Division. She had only worked for Eurofins for approximately four weeks. Her former position at Intertek was never filled and was eventually eliminated.

Intertek is claiming two forms of damages resulting from the solicitation of Jordan. First, it seeks the $145,478.50 of additional sums it paid to hire Jordan back from Eurofins. (Doc. No. 49-10 at 5-6). Secondly it seeks the return of the severance payment it made to Tiemann based upon Tiemann's alleged breach of the non-solicitation clause.

The Court addresses the latter claim first. It has already held the portion of the contract that Intertek claims was breached to be unenforceable. Consequently, it cannot be the basis of a breach of contract claim. Nevertheless, should that ruling be reversed, this Court cannot grant as a matter of law Tiemann's argument that Intertek cannot seek the return of the severance pay because the contract provides for no such relief and because he has otherwise earned that severance pay by the other consideration he has provided.

The damages claim based on Jordan's rehire and promotion is much more fact intensive. While Tiemann's argument that Intertek paid Jordan additional sums because she was hired back to a different and higher-profile position has appeal, it is not conclusive. Further, Intertek takes the position that it would have never promoted Jordan or paid her more money but for Tiemann's alleged interference. This position is not necessarily a positive comment on either Intertek's human resources program or Jordan's abilities as it basically argues that it would have never promoted Jordan or paid her more salary if she had not left to work for Eurofins. Tiemann's contention that

Jordan got more pay because she was promoted to a Vice-President position with more responsibility seems obvious and it sets the stage for some interesting rebuttal testimony by Intertek – to the effect that but for Tiemann's interference, Intertek would have never promoted Jordan or given her a pay raise. Regardless of how either side portrays this issue, it is rife with factual issues that cannot be resolved at the summary judgment stage.

### D. Confidential Information

The Court finds no evidence that Tiemann divulged or used confidential information belonging to Intertek. In response to Tiemann's motion for summary judgment on this point, Intertek cites this Court to no information (confidential, proprietary, or otherwise) that Tiemann disclosed to Eurofins. Instead, it refers the Court to its own motion for summary judgment at paragraph 3. (Doc. No. 52 at 7 n.2). The Court notes that Intertek's motion for summary judgment does not number paragraphs so that reference is hard to follow. There is a subpart 3 that argues that Tiemann breached his duty not to solicit Intertek employees. Within that subpart there is no mention of any confidential information being disclosed. (Doc. No. 49 at 19).

The only actual specific contention by Intertek appears to be a claim that Tiemann disclosed to Eurofins the compensation that Intertek was paying to Jordan. This contention, however, is not supported by any evidence. Moreover, Jordan testified under oath that she was the person who disclosed to Intertek her compensation information. (Doc. No. 54-2 at 3).

This claim is meritless and the Court grants Tiemann's motion for summary judgment on this point.

### V. Conclusion

The Court hereby denies the Motion to Strike filed by Defendant. (Doc. No. 53). The Court denies the Motion for Summary Judgment filed by Intertek. (Doc. No. 49). The Court grants the

Motion for Summary Judgment filed by Tiemann (Doc. No. 46) and finds, based on the unenforceability of the non-solicitation clause, that Intertek shall take nothing in this case. In so doing, the Court finds, subject to its unenforceability ruling, a factual dispute would exist regarding the solicitation of Jordan. Should this Court's overall summary judgment in favor of Tiemann be set aside, a fact issue would exist as to the solicitation of Jordan and any resulting damages. Separate and apart from its ruling on the unenforceability of the non-solicitation provision, the Court grants summary judgment against Intertek's claims of wrongful use of confidential information and the alleged solicitation of Maks. It hereby denies without prejudice Tiemann's request for attorney fees and will take that issue up if a separate post-judgment motion is filed.

Signed on this the 29th day of August 2024.

Andrew S. Hanen
United States District Judge